Matter of Osher W. (Moshe W.) (2021 NY Slip Op 05706)





Matter of Osher W. (Moshe W.)


2021 NY Slip Op 05706


Decided on October 20, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 20, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ANGELA G. IANNACCI
LINDA CHRISTOPHER
JOSEPH A. ZAYAS, JJ.


2020-00163
2020-00440
 (Docket Nos. NA-14641-16, NA-14642-16, NA-14643-16, NA-14644-16)

[*1]In the Matter of Osher W. (Anonymous). Administration for Children's Services, respondent; Moshe W. (Anonymous), appellant. (Proceeding No. 1)
In the Matter of Rifky W. (Anonymous). Administration for Children's Services, respondent; Moshe W. (Anonymous), appellant. (Proceeding No. 2)
In the Matter of Yosef W. (Anonymous). Administration for Children's Services, respondent; Moshe W. (Anonymous), appellant. (Proceeding No. 3)
In the Matter of Elimelech W. (Anonymous). Administration for Children's Services, respondent; Moshe W. (Anonymous), appellant. (Proceeding No. 4)


Jennifer Arditi, Maspeth, NY, for appellant.
Georgia M. Pestana, Corporation Counsel, New York, NY (Melanie T. West and Julia Bedell of counsel), for respondent.
Louisa Floyd, Brooklyn, NY, attorney for the child Osher W.
Seth Myles, Brooklyn, NY, attorney for the child Rifky W.
Catherine S. Bridge, Staten Island, NY, attorney for the children Yosef W. and Elimelech W.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 10, the father appeals from (1) an order of disposition of the Family Court, Kings County (Ilana Gruebel, J.), dated April 17, 2019, and (2) an order of disposition of the same court dated December 17, 2019. The first order of disposition, upon an order of fact-finding of the same court dated June 12, 2018, made after a fact-finding hearing, finding, inter alia, that the father sexually abused the child Osher W. and [*2]derivatively abused the children Rifky W., Yosef W., and Elimelech W., and, after a dispositional hearing, inter alia, placed the child Osher W. in the custody of the Commissioner of Social Services under the supervision of a foster care agency until the completion of the next permanency hearing, on November 21, 2019, and placed the father under the supervision of a child protective agency, social services official, or duly authorized agency until the completion of the next permanency hearing, on November 21, 2019. The second order of disposition, upon the same order of fact-finding and after a dispositional hearing, among other things, released Yosef W. and Elimelech W. to the care of the nonrespondent mother under the supervision of the Administration for Children's Services for a period of 12 months, with certain terms and conditions imposed on the father.
ORDERED that the appeal from so much of the first order of disposition as placed Osher W. in the custody of the Commissioner of Social Services under the supervision of a foster care agency until the next permanency hearing, on November 21, 2019, and placed the father under the supervision of a child protective agency, social services official, or duly authorized agency, until the completion of the next permanency hearing, on November 21, 2019, is dismissed, without costs or disbursements; and it is further,
ORDERED that the appeal from so much of the second order of disposition as released Yosef W. and Elimelech W. to the care of the nonrespondent mother under the supervision of the Administration for Children's Services for a period of 12 months is dismissed, without costs or disbursements; and it is further,
ORDERED that the orders of disposition are affirmed insofar as reviewed, without costs or disbursements.
The appeals from so much of the orders of disposition as placed Osher W. in the custody of the Commissioner of Social Services under the supervision of a foster care agency until the next permanency hearing, on November 21, 2019; placed the father under the supervision of a child protective agency, social services official, or duly authorized agency, until the completion of the next permanency hearing, on November 21, 2019; and released Yosef W. and Elimelech W. to the care of the nonrespondent mother under the supervision of the Administration for Children's Services (hereinafter ACS) for a period of 12 months, must be dismissed as academic, as those portions of the orders have expired (see Matter of Sha-Naya M.S.C. [Derrick C.], 130 AD3d 719, 720).
The Family Court's finding that the father sexually abused his son Osher W. is supported by a preponderance of the evidence (see Family Ct Act §§ 1012[e][iii][A]; 1046[b][i]; Penal Law §§ 130.52, 130.60). The evidence presented at the fact-finding hearing established that, in approximately 2003, when Osher was approximately four years old, he told his maternal grandmother that the father had made Osher touch the father's penis and that a "white thing" came out. Osher's grandmother did not report this incident to the police. She explained at the fact-finding hearing that, in the Hasidic community, it was considered "not proper" to do so. She chose, instead, to refer the matter to a "Rabbinical Court." The father, according to his hearing testimony, become aware of a "ruling" by that court when Osher was approximately six years old. He claimed not to know the substance of the ruling, and denied participating in the process that led to its issuance. But he acknowledged that, because of the ruling, he had limited contact with Osher for approximately a decade.
In the fall of 2015, when Osher was 16, he stayed at his father and stepmother's house for approximately a month during the Jewish high holidays. Several weeks later, in December, while visiting his maternal grandmother, Osher disclosed that the father had again sexually abused him. He said that, at night, the father came to the room upstairs where Osher was sleeping, "laid himself on top of [Osher] and started playing with . . . [Osher's] private parts." This happened more than once, Osher told his grandmother. During one of the incidents, one of Osher's half-brothers, Elimelech W., came upstairs, but quickly left.
In May 2016, ACS began an investigation into these allegations. An ACS caseworker [*3]interviewed Osher on May 31, 2016. Osher told the caseworker about the incident that occurred when he was four, as well as the more recent incidents from the previous fall. Approximately a week later, Osher was interviewed by a detective from the New York City Police Department's Special Victims Unit. The ACS caseworker was present for that interview and found that the account Osher provided was consistent with what he had previously reported.
Contrary to the father's contention, the Family Court did not improvidently exercise its discretion in determining that Osher's out-of-court statements to his grandmother and the ACS caseworker were sufficiently corroborated (see Matter of Christopher L., 19 AD3d 597, 597). That Osher's disclosure to his grandmother, when he was approximately four years old, included "age-inappropriate knowledge of sexual matters" ( Matter of Kyle D. [Dwayne D.], 138 AD3d 835, 836) supported the conclusion that his account of that incident was truthful. Moreover, Osher's accounts of that incident, as well as his descriptions of the sexual abuse that occurred in 2015, were both detailed and consistent. And, "[a]lthough the mere repetition of an accusation does not, by itself, provide sufficient corroboration, some degree of corroboration can be found in the consistency of the out-of-court repetitions" (Matter of Lily BB. [Stephen BB.], 191 AD3d 1126, 1127 [internal quotation marks omitted]).
Osher's allegations were further corroborated by certain changes in his behavior observed by his grandmother soon after he stayed with his father in the fall of 2015, when Osher alleged that the father had sexually abused him (see Matter of Tyson G., 144 AD2d 673, 674), as well as the fact that, when Osher was interviewed by the ACS caseworker in the spring of 2016, Osher said he had been asked to leave a school in upstate New York because he was "touching his private parts . . . in front of other kids" (see Matter of Kimberly CC. v Gerry CC., 86 AD3d 728, 730).
The Family Court also correctly found that the father's acquiescence to the Rabbinical Court ruling—the substance of which he claimed not to completely understand, but which restricted his contact with Osher for nearly a decade—was, in essence, indicative of a consciousness of guilt (see People v Yazum, 13 NY2d 302), and, therefore, corroborated Osher's allegations of being sexually abused by his father when he was four.
Although a finding of sexual abuse of one child does not, by itself, establish that other children in the household have been derivatively abused or neglected (see Matter of Monica C.M. [Arnold A.], 107 AD3d 996, 997), here, the father's sexual abuse of Osher evinced a flawed understanding of his duties as a parent and impaired parental judgment to a sufficient degree to support the Family Court's finding of derivative abuse of Rifky W., Yosef W., and Elimelech (see Family Ct Act § 1046[a][i]; Matter of Zamir F. [Ricardo B.], 193 AD3d 932, 935-936; Matter of Cashmere T. [Andrew S.], 161 AD3d 1177, 1178-1179). That Osher's half-brother Elimelech apparently walked in during one of the episodes of the father's sexual abuse of Osher strongly supported this finding (see Matter of Mayra C. [Adan C.], 163 AD3d 808, 810; cf. Matter of Demetrius C.[David C.], 156 AD3d 521, 522).
DILLON, J.P., IANNACCI, CHRISTOPHER and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court